SISTERS OF CHARITY OF PROVIDENCE OF MONTANA, A CORPORATION, PLAINTIFFS AND RESPONDENTS, v. GLACIER COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF MONTANA, AND THE GLACIER COUNTY WELFARE BOARD, DEFENDANT AND APELLANT.

No. 14013.
Submitted June 13, 1978.
Decided July 3, 1978.
581 P.2d 830.

Frisbee & Moore, David Stufft, argued, Cut Bank, for defendant and appellant.

Cure & Borer, Maxon R. Davis, argued, Great Falls, for plaintiffs and respondents.

MR. JUSTICE DALY delivered the opinion of the Court.

This appeal arises from an action filed by three physicians and the Sisters of Charity of Providence of Montana, who operate the Columbus Hospital in Great Falls, Montana, against Glacier County, Montana, and the Glacier County Welfare Board on their claims for medical services and hospitalization furnished to Mrs. Elizabeth Austin during 1969 and 1970. Plaintiffs allege Mrs. Austin was a medically indigent resident of Galcier County and the County was required to pay her medical and hospital bills. Glacier County denied any obligation to pay these claims.

The Sisters of Charity and the three physicians moved for summary judgment. The trial court denied their motion on the basis there was a question as to when the respective claims against Glacier County accrued. After further discovery the Sisters of Charity filed another motion for summary judgment. The trial court granted this motion and at the same time dismissed the claims of the three physicians. A summary judgment in favor of the Sisters of Charity was entered. Glacier County appeals from the judgment.

Three issues are presented for review:

1. Whether the trial court erred in holding that as a matter of law, Mrs. Austin was medically indigent?

2. Whether the trial court erred in holding the Sisters of Charity of Providence of Montana is a real party in interest?

3. Whether the trial court erred in holding that the statute of limitations did not bar recovery?

At approximately 2 a.m. on December 4, 1969, Kenneth Austin discovered his wife Elizabeth lying unconscious on the bathroom floor in the family home in Cut Bank, Montana. Comatose, she was taken in an ambulance to Glacier Memorial Hospital in Cut Bank.

At the time she became ill Mrs. Austin was 46 years old. She was married, the mother of five children and a fulltime housewife. She and her husband had made their home in Cut Bank for approximately 25 years. Although the exact percentage was never established it was agreed that Mrs. Austin is of partial Cree Indian ancestry.

After hospitalization for approximately one week in Cut Bank Mrs. Austin improved to the extent that the attending physicians thought it would not be detrimental to transfer her. She was taken by ambulance to the Public Health Service Hospital in Browning, Montana. She remained there four days. On December 15, 1969 she was transferred by ambulance to the Columbus Hospital at Great Falls, Montana, operated by the Sisters of Charity. Mrs. Austin was hospitalized at Columbus Hospital from December 15 to December 19, 1969 while a neurological specialist and other physicians performed tests to make a detailed diagnosis of her condition. The facilities necessary to conduct these tests were not available in either Cut Bank or Browning. The neurologist diagnosed a subarachnoid hemorrhage from a rupture of an aneurysm arising from the right carotid artery siphon. Mrs. Austin had suffered a stroke.

Following the tests Mrs. Austin was returned to the Public Health Service Hospital in Browning. She remained there for two weeks. A review of the Columbus Hospital tests by the examining physicians indicated surgery was necessary. Mrs. Austin was read-

mitted to Columbus Hospital on January 5, 1970. Dr. Gaston Syrenne, a neurosurgeon, operated twice on her vascular system to correct the damage caused by the ruptured aneurysm. The type of medical services furnished by Dr. Syrenne were not available in either Browning or Cut Bank, Montana. The closest possible location where the surgery could be performed in Great Falls, Montana. Mrs. Austin remained hospitalized at Columbus Hospital through March 7, 1970. There is no question but that this period of hospitalization was usual for this type of procedure and there is no evidence to indicate an excessive recovery time. During her hospitalization at Columbus Hospital Mrs. Austin incurred a bill of $6,444.45.

Mrs. Austin returned to the Public Health Services Hospital in Browning and eventually to the family home in Cut Bank. She remains a semi-invalid with about 60 percent use of her limbs.

At the time of Mrs. Austin's stroke and afterwards the sole support for the Austin family was provided by her husband Kenneth Austin who worked as a custodian at Cut Bank High School. He was 59 years old at the time Mrs. Austin fell ill. His average take home pay was under $420 per month. Four of the five Austin children were living at home. The only property of substance owned by the Austins was the family home. They had no savings or investments and were without medical insurance. Consumer purchases were paid for by installment financing. Mr. Austin drove a 1964 Buick worth approximately $500. The family appeared to be living on a day-to-day basis.

According to Glacier County Kenneth Austin applied to the Glacier County Welfare Board for medical assistance on January 23, 1970, during the time Elizabeth Austin was hospitalized in Great Falls. His application was rejected by Glacier County because the family income was "above welfare standards". Glacier County asserts its Welfare Board denied Austin's application on July 8, 1970.

Columbus Hospital submitted a claim of $6,444.65 directly to the Glacier County Commissioners for services rendered to

Elizabeth Austin. Glacier County rejected this claim on January 11, 1971. On July 7, 1971, this action was commenced.

In this action Glacier County does not try to directly disavow its obligation. However, the County seeks to avoid payment of this claim under the assertion that Elizabeth Austin was not in fact an indigent. Also, Glacier County argues that in "non-emergency" situations, Glacier County has the right to make contractual arrangements outside the county in order to satisfy its duty and that in the absence of proof of emergency or of a contract the claim of the Sisters of Chairty must fail. The County further argues the claim of a hospital is wholly derivative from that of the indigent recipient of care and that (1) the hospital is not the real party in interest, and (2) the County can assert procedural defenses personal to the recipient against the hospital.

The duty of Montana counties to provide resident indigents with medical aid and hospitalization exists by virtue of an express command of the legislature. Section 71-308, R.C.M. 1947, stated before amendment in 1977:

"Medical aid and hospitalization for persons unable to provide such necessities for themselves are hereby declared to be the legal and financial duty and responsibility of the board of county commissioners * * *."

Issue 1 relates to the deposition of Kenneth Austin which established that the Austin family was unable to pay the hospital bills incurred as a result of Elizabeth Austin's stroke. Glacier County denied the Austin welfare application because Kenneth Austin's income was above welfare standards. This Court has declared that such administrative standards cannot be applied in a situation where to do so would be "unreasonable". St. Patrick Hospital v. Powell County, (1970), 156 Mont. 153, 159, 477 P.2d 340, 343. in determining medical inindigency under section 71-308, R.C.M. 1947, this Court stated in State ex rel. Hendrickson v. Gallatin County, (1974), 165 Mont. 135, 140, 141, 526 P.2d 354, 357:

"'* * * we do not understand the legislative intent to be that in order for a person to be an "indigent person" within the meaning

thereof to receive medical assistance there must be a total lack of resources. Rather, we believe the legislative intent was to include those persons who do not have the present or future hope of resources sufficient to pay for all [of] the medical and hospital services required in emergency instances.'"

■ In *St. Patrick Hospital v. Powell County*, supra, it was recognized that each case of nonwelfare medical indigency must be determined on its own facts. In the instant case, it is clear from the record that the Austins were indigent by the standard announced by this Court. As a partially paralyzed stroke victim Elizabeth Austin could not be classified as employable. As a school custodian Mr. Austin brings home barely enough income to meet expenses on a day-to-day basis. Mr. Austin at the time of his wife's illness was 59 years of age. There is no basis upon which to assume that his income would increase in his remaining productive years, much less to a level required to pay this large debt.

The family had no health insurance or savings. While the family did own its home and if it were to be sold to raise the money the cost of obtaining alternate housing would be far in excess of current expenses for taxes and upkeep and beyond the limit of the family resources. The trial court did not err in holding as a matter of law that the Austins were medically indigent.

■ Glacier County also argues that Elizabeth Austin cannot be considered indigent because she failed to have the federal government pay her medical bills, as she is a Cree Indian who qualifies for Indian medical benefits. Neither case law nor section 71-308, R.C.M. 1947, requires such an undertaking. The Montana legislature has imposed an obligation upon counties to provide medical and hospital aid to indigents. The fact that there may be collateral sources which are liable should not be considered in determining indigency unless it is demonstrated that such collateral source is currently available for medical expenses. Glacier County offered no evidence that indicated the present availability of federal funds to pay Austin's medical bills.

In Issue 2, Glacier County contends that the right of a hospital to

bring a claim under section 71-308 is authorized only in emergency situations and accordingly the hospital in this case is not the real party in interest. It argues that non-emergency situations its duty under section 71-308, R.C.M.1947, is limited by contractual arrangement between the County and the hospital. We cannot agree with the County's assertion that this was not an emergency situation. It is undisputed that while Mrs. Austin was at the Public Health Service Hospital in Browning, the facility did not have the diagnostic equipment to determine the genesis of her symptoms, which appeared serious. Hence, she·was transported to Great Falls for diagnostic tests. Those tests disclosed Mrs. Austin sustained a serious stroke which left her partially paralyzed. Although her transfer to Columbus Hospital was 11 days after her stroke, Glacier County produced no medical evidence that such transfer to Great Falls was not an emergency.

Even if we were to accept Glacier County's contention that Elizabeth Austin was not an emergency case, the argument still lacks merit. In the instant case, Glacier County asserts that it should have had the right to negotiate competent medical service at reasonable cost to the county. Mrs. Austin is not required to wait until the County decides to which hospital she should be transferred. This argument has little persuasion when considered in light of the fact that Glacier County has consistently denied Mrs. Austin's status as an indigent. While Kenneth Austin did apply to the Glacier County Welfare Board during the period Mrs. Austin was hospitalized in Great Falls, Glacier County did not reject the application until July 1970, some four months after Elizabeth's discharge from the hospital. Following the County's reasoning to its logical conclusion Kenneth Austin would have had to pursue his welfare application through the administrative process and thereafter through the courts to have Glacier County accept Elizabeth Austin as indigent; once accepted Glacier County would then have the right to make contractural arrangements for her care and at that point, Mrs. Austin would have been eligible for treatment under section 71-308, R.C.M.1947. If this were the case, sec-

tion 71-308 would be of little benefit to Elizabeth Austin or other medically indigent persons in need of immediate care.

■ County commissioners do not have the right to make medical decisions. Once Elizabeth Austin fell ill, how she would be cared for could only be resolved by physicians. Accordingly, the physicians who treated Mrs. Austin determined the closest place at which adequate and necessary care could properly be provided was the Columbus Hospital in Great Falls. The trial court was correct in holding that the Sisters of Charity of Providence is a real party in interest.

■ In issue 3, Glacier County argues the Sisters of Charity's rights are wholly derivative from that of the patient. It asserts the Austins made no claim for medical assistance within the six month statute of limitations and therefore the Sisters of Charity claim is also barred by the statute.

Such as assertion is not valid. As stated in Issue 2, the Sisters of Charity is a real party in interest and its claim was not a derivative claim from that of the patient. Section 93-2609(2), R.C.M.1947, governs this action; a six month statute of limitation applies. Glacier County admits the Sisters of Charity presented a specific claim for $6,444.65 to the County. This claim was rejected by the County on January 11, 1971. The complaint in this action was filed on July 7, 1971, within six months of the denial of the hospital's claim. The Sisters of Charity complied with section 93-2609(2).

Glacier County has failed to produce evidence that would create a genuine issue of fact of law; the summary judgment entered by the trial court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.