No. 85-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

DEACONESS MEDICAL CENTER OF BILLINGS,
INC.,

    Petitioner and Appellant,

  -vs-

DEPARTMENT OF SOCIAL & REHABILITATION
SERVICES & STATE BOARD OF SOCIAL &
REHABILITAION APPEALS, & PETROLEUM
COUNTY, a political subdivision, of
the State of Montana

    Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
      In and for the County of Yellowstone,
      The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Felt & Martin; Kenneth S. Frazier argued, Billings,
    Montana

  For Respondent:

    Russell E. Cater argued, Dept. of SRS, Helena, Montana
    Wilkins & Berger; William Berger argued, Lewistown,
    Montana

---

        Submitted: April 1, 1986

         Decided: June 18, 1986

Filed: JUN 18 1986

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Billings Deaconess Hospital, Inc. (Deaconess), appeals a judgment of the District Court of the Thirteenth Judicial District, Yellowstone County, in favor of Petroleum County and the Department of Social and Rehabilitation Services (SRS). The judgment affirmed Petroleum County's and SRS's denial of medical benefits to the James D. Wymore family.

On appeal, we will consider the constitutionality of income limitations in § 53-3-103(3), MCA (1983) and in the Petroleum County Medical Plan. Appellant contends that the limitations violate Montana's constitutional guarantee of assistance for the medically needy. We uphold the constitutionality of the income limitations in the statute and the county plan. However, our examination of the record also convinces us that neither the statute nor the plan was properly applied to the Wymores' situation. We therefore remand for a determination of whether the Wymores' were medically indigent and entitled to relief.

Subsection (3) of Section 3 of Article XII of the 1972 Montana Constitution provides:

> The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reason of age, infirmity, or misfortune may have need for the aid of society.

Pursuant to this mandate, the legislature has established a county medical assistance program to provide assistance for eligible parties who are not covered by the Montana Medicaid program. See §§ 53-3-101 et seq. and 53-6-101 et seq., MCA. This program is financed and administered by the county but is supervised by SRS.

Prior to the 1985 legislative session the eligibility criteria were established in a "county plan" which was adopted by the counties pursuant to §§ 53-3-103 and 53-3-301, MCA (1983). We note that these sections were repealed by the 1985 legislature but the substantive contents were reenacted as § 53-3-206(5), MCA. This opinion therefore applies to both § 53-3-206(5), MCA, and § 53-3-103(3), MCA (1983).

Section 53-3-103(3), MCA (1983), contained the income limitation challenged by appellant:

> (3) The department may promulgate rules to determine under what circumstances persons in the county are unable to provide medical aid and hospitalization for themselves, including the power to define the term "medically needy." However, the definition may not allow payment by a county for general assistance-medical for persons whose income exceeds 300% of the limitation for obtaining regular county general relief assistance. . . .

Section 53-3-301, MCA (1983), delegated to the counties the power to determine who is eligible for assistance according to rules established by the county board and approved by SRS. Petroleum County established such rules in a county medical plan that was approved by SRS. Section 6.1(A)(1)(a) of that plan contains a much lower income limitation than the ceiling income in the statute. Specifically, § 6.1(A)(1)(a) of the county plan provides as follows:

> The maximum gross income level for an applicant or recipient is . . . current AFDC [Aid to Families with Dependent Children] benefit standard for family of same size.

Since Petroleum County provides for general county relief at 80 percent of the AFDC standard, the income ceiling in § 53-3-103(3), MCA (1983), is nearly 2½-times greater than the income limitation in the county plan. Because of this

3

great difference between the income limitation in the county plan and in the statute, we will consider their constitutionality separately.

There is another provision in the county plan that is important to our analysis of the constitutionality of the above-quoted income limitation. That provision, called a "spend-down provision" in the plan, allows medical expenses to be deducted from an applicant's income in determining eligibility. See § 6.1(A)(1)(b), Petroleum County Medical Plan. By § 6.1(A)(1)(b) an applicant whose income exceeds the limit may still be eligible if his medical expenses are greater than his excess income.

Zane Wymore, the minor son of James D. Wymore, was hospitalized at Billings Deaconess Hospital from February 10 to April 6, 1983. The bill for the hospitalization came to $10,000. The Wymores were uninsured and unable to pay the bill. Mr. Wymore had applied to Petroleum County, where they resided, for county medical assistance on February 9, 1983.

At the time of application, Mr. Wymore drew unemployment compensation of $740 per month. The AFDC standard at that time for a family of six, like the Wymores, was $564 per month. ARM § 46-10.403. Mr. Wymore's income, therefore, exceeded the AFDC standard. Because the Petroleum County Medical Plan limits assistance to families with incomes less than the AFDC standard, the County denied assistance to the Wymores. In making this determination, the County did not reduce the Wymores' income by the amount of medical expenses as allowed for in the spend-down provision in the county plan. In the meantime, on April 1, 1983, Wymore started a new job which paid $1,000 per month and provided housing for the family.

4

Deaconess, as the medical provider, challenged the County's denial in a hearing before the SRS pursuant to ARM §§ 46-2.202(2) and 46-25.705. The hearing officer then determined that income criteria in the county plan did not violate § 53-3-103(3), MCA (1983), because the plan did not authorize benefits for families whose income exceeded 300% of the general relief standard. The hearing officer then determined that the County was within its authority under § 53-3-301, MCA (1983), to deny benefits based on criteria in its plan that had been approved by SRS. The hearing officer's findings and decision were affirmed on appeal to the State Board of Social and Rehabilitative Services (Board).

Deaconess then filed a petition for judicial review of the Board's decision by the District Court. Deaconess's contention on review was that the income limitation in the statute and in the county plan were unconstitutional. Both Deaconess and SRS moved for summary judgment. The District Court did not rule on the constitutionality issue and instead remanded the matter to SRS for a determination of whether the Wymores are medically indigent and therefore entitled to public assistance. SRS responded that it was without authority to consider the matter further because Wymore's income exceeded the 300% of general relief limitation in § 53-3-103(3), MCA (1983). In making this contention, SRS considered Wymore's income to be the $1,000 per month plus housing provided by his new job. We note that the Wymores' income of $740 per month that they received while Mr. Wymore was unemployed and when Zane was in the hospital was under the 300% (or, $1,353 per month) limitation in the statute but greater than the straight AFDC standard (or $564 per month) limitation in the county plan. If SRS had looked to the

5

earlier income, then it would have found that the statute did not prohibit aid to the Wymores.

Because SRS refused to consider the matter further, the District Court entered a final judgment affirming the denial of benefits. This appeal ensued.

We will test § 53-3-103(3), MCA (1983), first. Deaconess contends that the provision in the statute that denies benefits to those with incomes in excess of 300% of the AFDC standard violates Article XII, Section 3(3), of the Montana Constitution. Deaconess further contends that the statute violates state and federal equal protection guarantees. These two contentions actually present only one issue because we use equal protection analysis to test the constitutionality of a classification by the legislature. In other words, if the classification in the statute does not violate equal protection, the statute is constitutional.

The case of Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65, is determinative of the level of scrutiny we will apply to the statute. In Butte Community Union we determined that welfare mandated by Article XII, Section 3(3), is not a fundamental right. Therefore, strict scrutiny does not apply and the State is not required to show a compelling interest to limit welfare. However, we further determined that since the Montana Constitution, unlike the United States Constitution, specifically mandates welfare benefits, an abridgement of welfare requires something more than a rational relationship to a governmental objective. We went on to adopt our own middle-tier test for classifications affecting the rights created by Article XII, Section 3(3). This test requires that the State must demonstrate two factors for us to uphold

6

a classification of welfare benefit recipients. Those factors are: (1) that the State's classification of benefit recipients is reasonable; and (2) that the State's interest in classifying benefit recipients is more important than the peoples' interest in obtaining those benefits. We will now apply this test to the 300% of general welfare assistance limitation in § 53-3-103(3), MCA (1983).

Deaconess relies on the Saint Patrick Hospital line of cases to establish that denials of medical benefits based solely on income are unreasonable and therefore do not pass the first prong of the test. See Saint Patrick Hospital v. Powell County (1970), 156 Mont. 153, 477 P.2d 340; State ex rel. Hendrickson v. Gallatin County (1974), 165 Mont. 135, 526 P.2d 354; and Sisters of Charity, Etc. v. Glacier County (1978), 177 Mont. 259, 581 P.2d 830. These cases, however, are distinguishable from the case at bar. The Saint Patrick Hospital line of cases involved county denials of medical benefits to applicants with incomes above the state standard of eligibility for general assistance. In the case at bar, § 53-3-103(3), MCA (1983), sets the maximum income at three times the income limitation for general assistance. As such, the statute allows twice again as much income beyond that needed for basic necessities by which a party can purchase medical insurance and pay other medical bills. It is therefore reasonable to assume that a person with an income of three times the general assistance level is not medically indigent. Thus, the income limitation in § 53-3-103(3), MCA (1983), passes the first prong of the middle-tier test.

The second factor in our middle-tier analysis is a balancing test. Specifically, the interest of the State in limiting medical benefits is weighed against the interest of

7

the people in receiving the benefits. We believe the State's interest is greater.

If the State were not allowed to place a limit on the income of medical assistance recipients, there would be little incentive for anybody to purchase medical insurance. Given the high cost of medical care, most uninsured parties would be unable to pay their bill in the event of catastrophic injury. The cost to the State of paying these bills would be prohibitive. The State cannot afford to become the medical insurer for individuals who can afford their own medical insurance. On the other hand, people with income that is more than 300% of the general assistance level can reasonably be expected to obtain their own insurance. We hold that the State's interest in limiting medical assistance to those with incomes less than 300% of the limitation for general welfare outweighs the interest in obtaining benefits by those whose incomes exceed the limitation. Thus, the income limitation in § 53-3-103(3), MCA (1983), passes middle-tier scrutiny and is constitutional.

Deaconess also challenges the constitutionality of the income limitation in the Petroleum County Medical Plan. We believe the limitation is constitutional on its face. However, we also believe the County misapplied the limitation to unconstitutionally deny the Wymores' benefits.

We will first test the constitutionality of the income limitation as it was applied by the County--that is, we will test the limitation without the spend-down provision.

Section 6.1(A)(1)(a) of the county plan denies medical benefits to families whose incomes exceed the AFDC standard. The AFDC standard is the standard used by the State for determining eligibility for general assistance. As such, the

<u>Saint</u> <u>Patrick</u> <u>Hospital</u> line of cases, supra, are applicable. In those cases, we held that it was unreasonable to deny relief to the medically indigent solely because their income exceeded State standards for general assistance. In applying the rule from <u>Saint</u> <u>Patrick</u> <u>Hospital</u> here, we find that denying medical benefits solely because the applicant's income exceeds the AFDC standard is unreasonable.

We would reach the same conclusion without <u>Saint</u> <u>Patrick</u> <u>Hospital</u>. The AFDC standard was developed to set a maximum limitation on both the income of and the amount of benefits for recipients of general welfare assistance. The standard considers the cost of basic necessities but does not include medical costs. As such, it is unreasonable to assume that a person or family whose income equals the AFDC standard has the means to purchase medical insurance and pay medical bills in addition to the basic necessities. A denial of benefits based solely on the income limitation in 6.1(A)(1)(a) of the Petroleum County Medical Plan therefore fails under middle-tier scrutiny and is unconstitutional.

However, the county plan, if properly applied, would not deny benefits based solely on the income limitation in § 6.1(A)(1)(a). Besides the income limitation, the plan also has a spend-down provision, § 6.1(A)(1)(b), which allows medical expenses to be deducted from the income before comparison with the AFDC standard. We will now test the constitutionality of the income limitation with the spend-down provision.

As stated earlier in this opinion, the AFDC standard is set at the cost of basic necessities. The spend-down provision then allows additional income to go for medical insurance and expenses. Thus, unless the income exceeded 300% of

9

the limitation for obtaining regular county general relief assistance, when properly applied the county plan would only deny benefits to applicants with incomes in excess of that required to pay for both basic necessities and medical expenses. It is reasonable to assume that a person with income enough to pay for basic necessities and medical expenses is not medically indigent. The county plan therefore passes the reasonableness prong of middle-tier analysis.

The income limitation with the spend-down provision also passes the second prong balancing test by the same reasoning we applied to the statute. The State's interest in limiting medical assistance to those who cannot afford medical expenses outweighs the interest in obtaining benefits by those who can. The income limitation in the county plan is therefore constitutional on its face.

We will now consider whether or not the Wymores were properly denied benefits. The County and SRS originally denied the Wymores assistance based on an improper application of the income limitation in the county plan which we are now holding unconstitutional. When the District Court remanded to SRS, however, the Department switched to the statute as its basis for denial. Since we are upholding the limitation in the statute, this denial would have been proper unless the statute was improperly applied. The record convinces us that SRS's denial of benefits to the Wymores was based on an improper application of the statute. SRS's brief in support of its motion to amend the District Court order remanding the case reveals that SRS was utilizing the Wymores' income from Mr. Wymore's new job to find the family excluded by the statute. However, at the time Zane Wymore entered the hospital, the family's only income was from

unemployment compensation and was substantially less than the limitation in § 53-3-103(3), MCA (1983).

We believe that SRS utilized the wrong income in considering the Wymores' need on remand. The new general medical relief provisions of the Montana Code specifically provide that "[e]ligibility is determined as of the date medical service is first provided." Section 53-3-206(2), MCA. Although this provision was not in effect at the time of the Wymores' application, it is the only fair rule to apply now. It is unfair to assume the Wymores could have afforded medical insurance at the time Zane entered the hospital based on the income Mr. Wymore began to earn near the end of the hospitalization period. We hold that it was improper for SRS to determine the Wymores were ineligible for benefits based solely on the income from Mr. Wymore's new job.

We remand for a determination of whether the Wymores were "medically needy" under § 53-3-103(3), MCA (1983), with the instruction that need should be determined as of the date Zane was first hospitalized. We hold that the income limitation of § 53-3-103(3), MCA (1983), is constitutional. A denial of benefits based solely on the income limitation in the Petroleum County Medical Plan, § 6.1(A)(1)(a), however, is unconstitutional. If the county plan is used in the need determination, the Wymores' medical expenses must be deducted from their income.

_____
Chief Justice

11

We Concur:

_John Conway Harrison_

_L.C. Gulbrandson_

_Frank B. Morrison_

_John C. Sheehy_

_William E. Hunt_
Justices

12