No. 85-449

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

BUTTE COMMUNITY UNION, et al.,

        Plaintiffs and Respondents,

   -vs-

DAVE LEWIS, as Director of the
Montana State Department of Social
and Rehabilitation Services,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the First Judicial District,
            In and for the County of Lewis & Clark,
            The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Russell E. Cater argued, Special Asst. Atty. General,
        SRS, Helena, Montana
        Michael S. Becker argued, Special Asst. Atty. General,
        Helena, Montana

    For Respondent:

        James Goetz argued, Bozeman, Montana
        Russell A. LaVigne, Jr., Montana Legal Services,
        Helena, Montana
        Peggy Verberg, Missoula, Montana
        Robert L. Deschamps, Missoula County Attorney,
        Missoula, Montana

    For Amicus Curiae:

        James P. Reynolds, Helena, Montana; Butte Ministerial
        Association, City of Anaconda, City of Walkerville,
        International Union of Operating Engineers, Local 375,
        Butte, Women's Lobbyist fund
        Robert Hayes, New York, New York; National Coalition
        for the Homeless
        Gough, Shanahan, Johnson & Waterman; Joseph P. Mazurek,
        Helena, Montana; Montana Catholic Conference; Helena,
        Montana

_____

                Submitted: December 6, 1985
                  Decided: January 16, 1986

Filed:   JAN 16 1986

_____
                       Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The District Court of the First Judicial District issued a preliminary injunction enjoining Dave Lewis, Director of Montana's Department of Social and Rehabilitation Services (SRS), from implementing certain provisions of House Bill 843 (Chapter No. 670, 1985 Mont. Laws). Lewis appeals. We affirm the issuance of the preliminary injunction and issue a permanent injunction for the same purpose.

In response to a complaint filed by Butte Community Union in February of 1984, the Honorable Arnold Olsen issued a preliminary injunction June 29, 1984, prohibiting the Department of Social and Rehabilitation Services (SRS) from implementing proposed regulations establishing AFDC guidelines as the guidelines for determining general assistance (GA) benefits. Thereafter, the 1985 Montana Legislature enacted House Bill 843 establishing cash payment levels for GA recipients in accordance with Judge Olsen's order. House Bill 843 also eliminates GA payments to able-bodied individuals under thirty-five who have no minor dependent children and substantially restricts GA payments to able-bodied individuals between thirty-five and fifty who have no minor dependent children.

On June 3, 1985, Butte Community Union (respondents) filed an amended complaint challenging the constitutionality of HB 843 and requesting the court to issue a preliminary injunction forbidding SRS from implementing that part of HB 843 which restricts or denies GA benefits to able-bodied individuals with no minor children. Following a hearing and briefing by the parties, the trial court issued a preliminary injunction on July 1, 1985, the date HB 843 was to go into effect.

In its findings, conclusions and order, the trial judge held that art. XII, section 3(3) of the Montana Constitution establishes a fundamental right to welfare "for those who, by reason of age, infirmities, or misfortune may have need for the aid of society." That section states:

> (3) The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reason of age, infirmities, or misfortune may have need for the aid of society.

He further held that respondents (plaintiffs below) raised serious questions concerning whether HB 843 establishes an impermissible, discriminatory constitutional classification, thus violating the respondents' constitutional guarantee of equal protection. Finally, he held that a preliminary injunction should issue because respondents established a prima facie case that HB 843 is unconstitutional and because they showed that it is "doubtful whether or not they will suffer irreparable injury before their rights are fully litigated."

The preliminary injunction was issued and SRS appeals, raising the following general issue:

Whether the defendant, Dave Lewis, as a public official, should be enjoined from implementing those provisions of HB 843 which restrict or deny general assistance benefits to able-bodied persons under the age of fifty who do not have minor dependent children?

The following sub-issues are assigned for review:

1. Whether the District Court used an incorrect standard for issuing the preliminary injunction?

2. Whether HB 843 violates art. XII, section 3(3), of the Montana Constitution?

3. Whether HB 843 violates equal protection or due process constitutional guarantees?

3

4. Whether HB 843 violates the Montana Human Rights Act?

We hold that Dave Lewis, as a public official, should be permanently enjoined from implementing the pertinent provisions of HB 843. However, our reasons for this injunction differ markedly from those of the trial judge. We find that the Montana Constitution does not establish a fundamental right to welfare for the aged, infirm or misfortunate. However, because the constitutional convention delegates deemed welfare to be sufficiently important to warrant reference in the Constitution, we hold that a classification which abridges welfare benefits is subject to a heightened scrutiny under an equal protection analysis and that HB 843 must fall under such scrutiny.

Respondent contends that the result of this legislation is forbidden by the Constitution. Respondent argues the Legislature must fund welfare for the misfortunate. However, because the legislation at issue today is discriminatory in nature, determining its constitutionality calls for equal protection analysis. It is not necessary that we address the broader question of whether there is a constitutional directive to the Legislature for the funding of welfare which can not be avoided under any set of circumstances.

The fourteenth amendment to the Federal Constitution and article II, section 4 of the Montana Constitution provide that "[n]o person shall be denied the equal protection of the laws." The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. J. Nowak, R. Rotunda and J.N. Young, Constitutional Law, Chpt. 16, § 1 (2d ed. 1983).

Equal protection analysis traditionally centers on a two-tier system of review. If a fundamental right is infringed or a suspect classification established, the

4

government has to show a "compelling state interest" for its action. If the right is other than fundamental, or the classification not suspect, the government has only to show that the infringement or classification is rationally related to a governmental objective which is not prohibited by the Constitution. J. Nowak, supra.

In the instant case, the trial judge held the right to welfare to be fundamental. We can not agree. In order to be fundamental, a right must be found within Montana's Declaration of Rights or be a right "without which other constitutionally guaranteed rights would have little meaning." In the Matter of C.H. (Mont. 1984), 683 P.2d 931, 940, 41 St.Rep. 997, 1007. Welfare is neither.

Art. XII, § 3(3) of the 1972 Montana Constitution, the section on which the trial judge relies, is not part of the Declaration of Rights. Art. II, § 3 is the only section in the Declaration of Rights which arguably could create a right to welfare. It states:

> Inalienable rights. All persons are born free and have certain inalienable rights. They include the right . . . of pursuing life's basic necessities . . . .

Mont. Const., art. II, § 3 (1972). The official committee comment to that provision states:

> The intent of the committee on this point is not to create a substantive right for all for the necessities of life to be provided by the public treasury.

There is no constitutional right to welfare within the Montana Constitution's Declaration of Rights. Further, the right to welfare is not a right upon which constitutionally guaranteed rights depend. In fact, welfare is more properly characterized as a benefit. Since welfare is not a fundamental right, strict scrutiny does not apply and the State need show something less than a compelling state interest in order to limit that right.

Traditionally courts have applied a "rational basis" test for equal protection analysis where a fundamental right is not implicated. Rational basis is easily satisfied. The more stringent test, strict scrutiny requiring the state to show a compelling state interest, is seldom satisfied.

The United States Supreme Court only recently has begun to recognize the problem the two-tier system creates. G. Gunther, In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harvard L.Rev. 1, 17-20 (1972). Initially, the Court was particularly concerned with gender-based discrimination. Unable, or unwilling, to recognize gender as a suspect class, the Court still recognized that Congress should not be able to discriminate between the sexes on any "conceivable basis." The Court therefore adopted, in Craig v. Boren (1976), 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407, the middle-tier of review for analyzing gender-based discrimination. The Court said such discrimination will be upheld only when the government can show that the classification it has used is "substantially related" to an "important governmental objective."

Variations of this middle-tier test, or at least a failure to apply either of the other tests, have been recognized in discrimination cases involving illegitimate children (New Jersey Welfare Rights Organization v. Cahill (1973), 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543, and Weber v. Aetna Casualty & Surety Co. (1972), 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768); limitations on the right to vote (Rosario v. Rockefeller (1973), 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1); and mandatory retirement for police officers (Police Department of the City of Chicago v. Mosley (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212), to name a few.

Yet, the United States Supreme Court has consistently refused to apply this middle area of review to welfare and other social economic cases. In 1977, the Supreme Court, reversing the Idaho Supreme Court, held constitutional a statute denying unemployment benefits to otherwise eligible day-time students while granting them to eligible night-time students because the classification has some "reasonable basis", despite its imperfections. Idaho Department of Employment v. Smith (1977), 434 U.S. 100, 101-102, 98 S.Ct. 327, 328, 54 L.Ed.2d 324, 327-328. And, in Schweiker v. Wilson (1981), 450 U.S. 221, 231, 101 S.Ct. 1074, 1081, 67 L.Ed.2d 186, 195-196, the Court upheld a Social Security Act classification giving reduced Medicaid benefits to persons institutionalized in certain public mental care institutions, stating only that the statute did not discriminate against all mentally-ill people as a class. However, in their dissent, Justices Powell, Brennan, Marshall and Stevens stated they would have engaged in a review of the reasonableness of the classification.

The middle area of review has been discussed by several constitutional law scholars and Justice Marshall in many of his dissents. Each scholar has attached a different theory to the area. Gunther, the first to write of the Court's new direction, refers to the middle-tier as a tendency on the part of the Court to adopt one overarching level of review - is there an appropriate governmental interest furthered by the differential treatment? Do the legislative means substantially further the legislative ends? G. Gunther, supra, pp. 20-24.

Nowak calls the middle-tier test a "demonstrable basis standard of review" where the government must show a factual basis for the discrimination.

7

> Under the intermediate demonstrable basis standard,
> a classification based on a neutral classification
> [as opposed to a suspect classification] will be
> invalid if the state cannot demonstrate a factual
> relationship between a state interest capable of
> sustaining analysis and the means chosen to advance
> that interest.

J. Nowak, Realigning the Standards of Review under the Equal

Protection Guarantee - Prohibited, Neutral, and Permissive

Classifications, 62 Georgetown Law Journal 1071, 1082 (1974).

Marshall, meanwhile, chastises his brothers for failing

to acknowledge and identify a specific middle-tier standard

of review despite relying on such a standard in numerous

cases.  In Dandridge v. Williams (1970), 397 U.S. 471, 90

S.Ct. 1153, 25 L.Ed.2d 491, Marshall states in his dissent

that welfare does not fit in the two classifications and that

classifications in welfare favor an interventionist approach

on the part of the Court.  He then enunciates the following

test:

> [C]oncentration must be placed upon the character
> of the classification in question, the relative
> importance to individuals in the class
> discriminated against of the governmental benefits
> that they do not receive, and the asserted state
> interests in support of the classification.

Dandridge, 397 U.S. at 520-521, 90 S.Ct. at 1180, 25 L.Ed.2d

at 522-523.

This Court need not blindly follow the United States

Supreme Court when deciding whether a Montana statute is

constitutional pursuant to the Montana Constitution.  See

Justice Brennan's dissent in Idaho Department of Employment

v. Smith (1977), 434 U.S. at 103, 98 S.Ct. at 329, 54 L.Ed.2d

at 329, advocating that Idaho determine whether its

Constitution allows the previously discussed denial of

employment benefits to day-time students, as well as his

article, State Constitutions and the Protection of Individual

Rights, 90 Harv.L.Rev. 489 (1977).

8

We will not be bound by decisions of the United States Supreme Court where independent state grounds exist for developing heightened and expanded rights under our state constitution. This position was last articulated by our Court in Pfost v. State (Mont. 1985), ____ P.2d ____, 42 St.Rep. 1957. Justice Sheehy writing for the majority said:

> Art. II, § 4, of our State Constitution provides in part that "[n]o person shall be denied the equal protection of the laws." Art. II, § 4, 1972 Mont. Const. That provision of our State Constitution, though similar in wording to the last clause of the Fourteenth Amendment of the Federal Constitution provides a separate ground on which rights of persons within this state may be founded, and under accepted principles of constitutional law such rights must be at least the same as and may be greater than rights founded on the federal clause. Thus, states may interpret their own constitutions to afford greater protections than the Supreme Court of the United States has recognized in its interpretations of the federal counterparts to state constitutions. City and County of Denver v. Nielson (1977), 194 Colo. 407, 572 P.2d 484. Federal rights are considered minimal and a state constitution may be more demanding than the equivalent federal constitutional provision. Washakie Co. Sch. Dist. No. One v. Herschler (Wyo. 1980), 606 P.2d 310, cert.den. 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28. This is true even though our state constitutional language is substantially similar to the language of the Federal Constitution. Deras v. Myers (1975), 272 Or. 47, 535 P.2d 541, 549 n.17.

Pfost, ____ P.2d at ____, 42 St.Rep. at 1963-1964.

We proceed to develop our own middle-tier test for determining whether HB 843 violates the Montana Constitution. We do so because although a right to welfare is not contained in our Declaration of Rights, it is sufficiently important that art. XII, sec. 3(3) directs the Legislature to provide necessary assistance to the misfortunate. A benefit lodged in our State Constitution is an interest whose abridgement requires something more than a rational relationship to a governmental objective.

A need exists to develop a meaningful middle-tier analysis. Equal protection of law is an essential underpinning of this free society. The old rational basis

test allows government to discriminate among classes of people for the most whimsical reasons. Welfare benefits grounded in the Constitution itself are deserving of great protection.

In reviewing the textual discussions by constitutional authorities and the insightful dissents of Justices Marshall, Brennan, Powell, and Stevens we have distilled a test we think is sound. Where constitutionally significant interests are implicated by governmental classification, arbitrary lines should be condemned. Further, there should be balancing of the rights infringed and the governmental interest to be served by such infringement.

We hold that a finding that HB 843 is constitutional requires the State to demonstrate two factors: 1) that its classification of welfare recipients on the basis of age is reasonable; and 2) that its interest in classifying welfare recipients on the basis of age is more important than the people's interest in obtaining welfare benefits.

A reasonable classification is one which is not arbitrary. The State has failed to show that misfortunate people under the age of 50 are more capable of surviving without assistance than people over the age of 50. Broad generalizations, concluding that those who are 49 years of age can retrain or relocate while those who are days older cannot, are arbitrary.

Next, the State's objective in enacting HB 843 - saving money - must be balanced against the interest of misfortunate people under the age of 50 in receiving financial assistance from the State. The trial record does not show the State to

10

be in such a financially unsound position that the welfare benefit, granted constitutionally, can be abrogated.

This Court does not pass on the merits of welfare. The respective members of the Court may well have different views about the public policy justifying public assistance. These matters are not properly treated by an appellate court. Our task is simply to determine constitutionality of the statute. On that subject we are of one mind.

We find the provisions of HB 843, which restrict or deny general assistance benefits to "able-bodied persons under the age of fifty who do not have minor dependent children", to be unconstitutional. A permanent injunction is hereby issued prohibiting Dave Lewis, Director of SRS, from implementing those provisions.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy specially concurring:

In addition to my concurrence with the majority opinion, I wish to state some observations.

For the purposes of this case, I am willing to concede that a fundamental right to welfare for the individuals affected does not exist. There is however a constitutionally-mandated duty upon the legislature to provide economic assistance "as may be necessary" for the misfortunate who need the aid of society. Art. XII, § 3(3). When that duty is shirked by the legislature, upon whatever pretense, the class discriminated against has at least a constitutional right for redress in the courts. I am unable to distinguish the fine line between "fundamental right" for the discriminated class and the constitutional right for redress.

I do not wish to be bound by the statement in the majority opinion that fundamental rights under the Montana Constitution must be found within the Declaration of Rights, Art. II. The Article holds itself open to unenumerated rights which may not be denied to the people. Art. II, § 34.

_____
                    Justice

I concur with Justice Sheehy's concurrence.

_____
                    Justice

12

Mr. Justice L. C. Gulbrandson specially concurring.

I concur in the result and in the decision that the right to welfare is not a fundamental right but I do not concur in the adoption of a middle-tier standard of review in this case.

In my view, the legislation under attack does not meet the existing rational basis test and should therefore be declared unconstitutional. Thus, I do not perceive a need to adopt an additional test requiring a higher standard of review for legislation that may be enacted in the future. It appears that the newly adopted test, described as a middle-tier standard of review, actually replaces the rational basis test, even though no party to the action argued for its adoption.

In my opinion, the majority, by requiring the legislature to establish a factual record in its classification procedure, may have limited possible future legislative alternatives, because of time constraints existing in this matter, to the point where adequate welfare benefits may not be available to the needy.

_____
Justice

Mr. Chief Justice J. A. Turnage:

I concur in the specially concurring opinion of Mr. Justice L. C. Gulbrandson.

_____
Chief Justice

13