MR. JUSTICE MORRISON,
specially concurring:
I concur in the result but the majority Opinion is not entirely clear on a central issue.
First we must decide whether education is a fundamental right. The United States Supreme Court has held that education is not a fundamental right guaranteed by the federal Constitution. San Antonio School District v. Rodriquez (1972), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. In Rodriquez, it was argued that education is fundamental because it is essential to the effective exercise of First Amendment freedoms and the right to vote. The Court disagreed, stating “[W]e have never presumed to possess either the ability or *277 the authority to guarantee to the citizenry the most effective speech or the most informed electoral choice.” 411 U.S. at 36, 93 S.Ct. at 1298, 36 L.Ed.2d at 45.
In the recent case of Plyler v. Doe (1981), 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786, the Supreme Court reaffirmed its holding in Rodriquez that education is not a fundamental right guaranteed by the federal Constitution. Despite its holding, the Court placed great emphasis on the importance of education:
“But neither is it merely some governmental ‘benefit’ indistinguishable from other forms of social welfare legislation. Both the importance of education in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child, mark the distinction. The ‘American people have always regarded education and [the] acquisition of knowledge as matters of supreme importance.’ Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).”
Plyler, 457 U.S. at 221, 102 S.Ct. at 2397, 72 L.Ed.2d at 801.
This Court is not bound by the decisions of the United States Supreme Court where independent state grounds exist for developing expanded rights under our state Constitution. Butte Community Union v. Lewis (Mont. 1986), [219 Mont. 426,] 712 P.2d 1309, 43 St.Rep. 65; Pfost v. State (Mont. 1985), [219 Mont. 206,] 713 P.2d 495, 42 St.Rep. 1957.
In Butte Community Union, supra, we said, “In order to be fundamental, a right must be found within Montana’s Declaration of Rights or be a right without which other constitutionally guaranteed rights would have little meaning.” 712 P.2d at 1311, 43 St.Rep. at 68; citing In the Matter of C.H. (Mont. 1984), 683 P.2d 931, 940, 41 St.Rep. 997, 1007.
The right to education is not enumerated in Montana’s Declaration of Rights but is found in Article X, Section 1, Mont.Const. (1972). This section provides in part: “It is the goal of the people to establish a system of education which will develop the full educational potential of each person,” and further directs the legislature to “provide a basic system of free quality public elementary and secondary schools.”
The official committee comment to Article X, Section 1, opens with a statement stressing the importance of education in Montana:
“Education occupies a place of cardinal importance in the public realm. The educational system is charged with the task of shaping and cultivating the mind of each succeeding generation and with de *278 veloping the capacities for cultural and technical advancement of society.
For many, denial of a basic education would result in either illiteracy or severely retarded growth. Such individuals would be restricted from exercising, in a meaningful way, fundamental rights guaranteed in the Declaration of Rights such as the right to vote, right of participation, and right to know. Education is essential to even the most elemental exercise of many rights guaranteed by the Montana Constitution.
Education cannot be characterized as merely a benefit as was welfare in Butte Community Union, supra. The right to an education is not restricted in any manner. One need not qualify. Education is for all. Pursuant to Article X, Section 1, the legislature must provide a basic system of public schools, and each person is guaranteed equality of educational opportunity. In view of this constitutional mandate and the fact that education is essential to the exercise of other constitutionally guaranteed rights, we should clearly hold that basic education is a fundamental right under the Montana Constitution.
Next, we should address relators’ contention that participation in extracurricular activities is a fundamental right which may be infringed only upon a showing of a compelling state interest. Relators cite Moran v. School District No. 7 (D.Mont. 1972), 350 F.Supp. 1180, in which the federal district court found that the right to attend school includes the right to participate in extracurricular activities. In Moran, the court found the school board’s rule prohibiting married students from participating in extracurricular activities did not meet even a rational basis test. The court cited language from this Court’s decision in McNair v. School District No. 1 (1930), 87 Mont. 423, 288 P. 188:
“[I]t is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship — the good citizen, the man or woman who is of the greatest value to the state, is the one whose faculty is developed and alert.
“Education may be particularly directed to either mental, moral or physical powers or faculties, but in its broadest and best sense it embraces them all.”
87 Mont, at 428, 288 P. at 190.
Apparently we have not retreated from the position announced in McNair, although the majority analysis is somewhat murky. That case arose as a challenge by a taxpayer objecting to the construction *279 of a gymnasium and athletic field. There this Court held the school board had been granted the authority to provide such facilities. The emphasis in McNair was that education should attempt to improve mental, physical, and moral powers. That rationale still holds force today, but I find the Helena high schools’ 2.0 rule is an attempt to guarantee a sound education.
Regardless of whether the extracurricular activity is academic or non-academic, the state has a compelling interest in seeing that its young citizens receive a basic quality education. While the 2.0 rule is not based on studies showing improved grades by students operating under such a rule, there can be no denying it is sound incentive for those students who desire to engage in extracurricular activities. Further, it assures adequate time to study for those students affected by the rule.
Montana’s strong commitment to providing a quality system of education is clear under our Constitution. The state’s compelling interest in educating its citizens is reflected in Article X, Section 1, Mont. Const. (1972): “It is the goal of the people to establish a system of education which will develop the full educational potential of each person.” Respondents’ 2.0 rule is a policy designed to achieve this constitutional directive.
The supervision and control of the public schools in each district is vested in a board of trustees pursuant to Article X, Section 8. The trustees’ action does not deny educational opportunity, whether academic or nonacademic, to any students. Rather it seeks to create priorities within the curriculum to the end that students will receive the best education possible.
Relators contend the 2.0 rule violates the guarantee of equal educational opportunity found in Article X, Section 1, Mont. Const. (1972). The committee comments to Article X, Section 1, reflect a concern that Montana’s educational financing system provide equal educational opportunity.
“The subject of ‘equal educational opportunity’ has become a particularly important doctrine in modern education. Recent federal, district and state court decisions have interpreted the Fourteenth Amendment to the federal Constitution as applying to educational financing. Under this doctrine, the state must show a compelling interest to maintain a classification system by wealth which interferes with the individual’s fundamental right to an education.”
To satisfy the burden of proving the denial of equal educational opportunity, relators would first have to show that affected students *280 are incapable of maintaining a 2.0 grade average and are thereby banned in fact from activity participation. Learning disabled and special education students are exempted from the rule. Relators have not shown that they are unable to meet the requirement. With the exemption noted for special education youngsters, all students are given the same opportunity.
I would hold that respondents’ 2.0 rule is a constitutionally sound method of furthering the state’s compelling interest in educating its citizens.