No. 88-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF KEITH WAYNE WOOD,
a Youth under the age of Eighteen.

APPEAL FROM:   The Youth Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

Stephen J. Nardi; Sherlock & Nardi, Kalispell, Montana

        For Respondent:

Honorable Marc Racicot, Attorney General, Helena, Montana
George Schunk, Assistant Attorney General, Helena, Montana
Ted O. Lympus, Flathead County Attorney, Kalispell, Montana

Submitted:   November 15, 1988

Decided:   February 14, 1989

Filed:

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to § 41-5-206(3), MCA, the youth court of the Eleventh Judicial District, Flathead County, ordered the case of Keith Wayne Wood, a youth, transferred to District Court. The youth appeals the transfer, arguing that § 41-5-206(3), MCA, is unconstitutional. We affirm the District Court.

The following issues were raised on appeal.

1.  Is § 41-5-206(3), MCA, unconstitutional because it:

(a)  denies a youth's right to due process?

(b)  denies a youth's right to equal protection?

(c)  violates the separation of powers doctrine of the Montana Constitution?

Keith Wayne Wood, a youth, was arrested on March 30, 1988 for two counts of deliberate homicide. He was brought before the youth court on March 31, 1988 for the purpose of appointing him a counsel and determining whether he should be detained. On April 4, 1988, the county attorney for Flathead County filed a motion pursuant to § 41-5-206(3), MCA, in the youth court to transfer the case to the District Court. Wood appeared before the youth court on May 6, 1988, at which time he conceded he was 16 years old at the time of the wrongful acts alleged in the petition and, if true, the acts alleged would constitute two counts of deliberate homicide under § 45-5-102, MCA.

On May 10, 1988, the youth court, by written order, granted the county attorney's motion and transferred jurisdiction over the matter of Keith Wayne Wood to the District Court of the Eleventh Judicial District, Flathead County. In its findings of fact, the youth court found that at the time of the alleged wrongful acts Wood was 16 years of

age, the acts, if true, would constitute deliberate homicide as defined in § 45-5-102, MCA, and probable cause existed to conclude that Wood committed the alleged acts.

In granting the order, the youth court relied on § 41-5-206(3), MCA, which states that

> The court shall grant the motion to transfer if the youth was 16 years old or older at the time of the conduct alleged to be unlawful and the unlawful act would constitute deliberate homicide as defined in 45-5-102, mitigated deliberate homicide as defined in 45-5-103, or the attempt, as defined in 45-4-103, of either deliberate or mitigated deliberate homicide if the act had been committed by an adult.

The youth court found this statute rationally based upon the age of the offenders and the seriousness of the offenses. The youth court thus found that the statute does not create an unreasonable age classification and therefore does not violate a youth's right to due process nor to equal protection. The youth court also found that the statute does not violate the constitutional guarantee of the separation of legislative and judicial powers, but rather found that redefining the Youth Court Act is a valid exercise of legislative authority. Wood appeals the transfer to District Court, presenting three constitutional issues for review.

The first issue raised on appeal is whether § 41-5-206(3), MCA, denies a youth's constitutional right to due process.

One of the purposes of the Montana Youth Court Act, §§ 41-5-101 through 41-5-809, MCA (1987), is to substitute rehabilitation in lieu of punishment for youths who have violated the law. Section 41-5-102(2), MCA. To further this purpose, the youth court is granted exclusive original jurisdiction of youths who have violated any law other than a traffic or fish and game law prior to having reached 18 years

- 3 -

of age. Section 41-5-203(1), MCA. The Act, however, also provides for a youth's transfer to district court upon a motion of the county attorney in certain instances. Section 41-5-206, MCA.

Wood argues that § 41-5-206(3), MCA, is unconstitutional because the provision denies a youth, aged 16 years or older and who has allegedly committed or attempted to commit deliberate or mitigated deliberate homicide, the right to a hearing whereby a youth court considers mitigating factors in its determination of whether to transfer the youth to district court. In particular, Wood argues that § 41-5-206(1), MCA, grants these youths a hearing to determine whether to transfer them to district court, but that § 41-5-206(3), MCA, dictates the outcome of the hearing by mandating the youth court to grant the county attorney's motion to transfer these youths.

In asserting this argument, Wood relies upon a United States Supreme Court decision, Kent v. United States (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. In Kent, a 16 year old youth from the District of Columbia was charged with housebreaking, robbery, and rape. Before transferring a youth aged 16 years or older from youth court to district court, the District of Columbia statute required a "full investigation." The youth court transferred jurisdiction of the youth to district court without a hearing or any investigation. Kent, 383 U.S. at 543-48, 86 S.Ct. at 1048-51, 16 L.Ed.2d at 87-90. The Supreme Court stated that the statute "assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a 'full investigation.'" Kent, 383 U.S. at 553, 86 S.Ct. at 1053, 16 L.Ed.2d at 93. The Court therefore held that procedural due process is required by the

Fourteenth Amendment when transferring a youth from youth court to district court. Kent, 383 U.S. at 557-63, 86 S.Ct. at 1055-58, 16 L.Ed.2d at 95-98.

The United States Supreme Court in Breed v. Jones (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346, however, recognized that it has

> never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings. Breed, 421 U.S. at 537-38, 95 S.Ct. at 1790, 44 L.Ed.2d at 360.

Subsequent United States' Court of Appeals decisions have held that a state's treatment of youths outside of the criminal system is not an inherent right and may be redefined or restricted by state legislation, so long as no arbitrary or discriminatory classification is involved. Woodard v. Wainwright (5th Cir. 1977), 556 F.2d 781, 785, cert. denied, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); see also United States v. Quinones (1st Cir. 1975), 516 F.2d 1309, 1311, cert. denied, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76; Cox v. United States (4th Cir. 1973), 473 F.2d 334, 336, cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116.

Wood recognizes that a youth's treatment outside of the criminal system may be redefined or restricted by the state legislature, but asserts that under § 41-5-206(1), MCA, the legislature granted all youths a hearing before being transferred to district court and that § 41-5-206(3), MCA,

dictates the outcome of that hearing for youths aged 16 years or older and who have committed or attempted to commit deliberate or mitigated deliberate homicide. We disagree with Wood's basic assertion. Section 41-5-206(1)(a)(i), MCA, provides that youths, aged 12 years or older and who have committed sexual intercourse without consent or who have committed or attempted to commit deliberate or mitigated deliberate homicide, may be transferred, after a hearing, to district court by motion of the county attorney. Section 41-5-206(3), MCA, however, provides that youths aged 16 years or older who have allegedly committed or attempted to commit one of these offenses--deliberate or mitigated deliberate homicide--must be transferred to district court upon a motion by the county attorney.

This Court first recognizes that § 41-5-206, MCA, is presumed constitutional and that the party attacking the statute, Wood, has a significant burden in proving its invalidity. T & W Chevrolet v. Darvial (1982), 196 Mont. 287, 292, 641 P.2d 1368, 1370. We hold that Wood failed to meet this burden. When interpreting statutes, this Court must adhere to the legislators' intent. State v. Hubbard (1982), 200 Mont. 106, 110-11, 649 P.2d 1331, 1333. Prior to 1987, § 41-5-206, MCA, required a hearing for all youths before transferring them to district court. The legislature amended the statute in 1987 by enacting § 41-5-206(3), MCA. This provision provides for automatic transfer of youths aged 16 years or older and who have allegedly committed or attempted to commit deliberate or mitigated deliberate homicide. The presumption exists that, by adopting an amendment to a statute, the legislature intended to make some change in existing law. Foster v. Kovich (1983), 207 Mont. 139, 144-45, 673 P.2d 1239, 1243. This Court must also, if possible, give effect to all of the provisions. Darby Spar,

- 6 -

Ltd. v. Dept. of Revenue (Mont. 1985), 705 P.2d 111, 113, 42 St.Rep. 1262, 1264-65. We therefore hold that § 41-5-206(3), MCA, which applies to youths aged 16 years or older, has the effect of limiting § 41-5-206(1), MCA, to youths aged 12 years or older but under the age of 16 years when the alleged offense is deliberate or mitigated deliberate homicide or the attempt of either. Section 41-5-206(3), MCA, therefore does not dictate the outcome of a hearing, since the youths who fall under this provision are not granted an initial hearing. Any other interpretation of the entire statute would render the legislature's enactment of subsection 3 of the statute meaningless.

Wood was transferred from youth court to district court under § 41-5-206(3), MCA. No procedural irregularities were alleged, nor were any evident in the record. Section 41-5-206(3), MCA, therefore meets the minimum federal requirements and does not violate Wood's right to due process under the Fourteenth Amendment.

The next issue raised on appeal is whether § 41-5-206(3), MCA, denies a youth's right to equal protection.

In asserting his equal protection argument, Wood only refers to the Equal Protection Clause of the United States Constitution. U.S. Const. amend. 14, § 1. As previously stated, youths aged 16 years or older and who have committed or attempted to commit deliberate or mitigated deliberate homicide are not granted a hearing prior to transfer to district court as a result of § 41-5-206(3), MCA. Since a state's treatment of youths outside of the criminal system is not an inherent right and may be redefined or restricted by state legislation, see Woodard, 556 F.2d at 785, this Court needs to determine next whether such a classification is constitutional under the Equal Protection Clause of the Fourteenth Amendment.

The United States Supreme Court recognizes three levels of scrutiny when determining whether a system of classification found within a state statute is constitutional. The strict scrutiny analysis, requiring the most exacting scrutiny, is applied when the classification is based on an inherently suspect class--race, national origin or alienage--or when the classification infringes on a fundamental right. See, e.g., Loving v. Virginia (1967), 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (race); Graham v. Richardson (1971), 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (alienage); Oyama v. California (1948), 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (national origin); Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (fundamental right to travel interstate); Dunn v. Blumstein (1972), 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (fundamental right to vote). When applying the strict scrutiny test, the government has the burden of proving that the statute is justified by a compelling state interest, narrowly tailored, and no other avenues less burdensome are available in which to accomplish the objective. Dunn, 405 U.S. at 342-43, 92 S.Ct. at 1003, 31 L.Ed.2d at 284-85.

The intermediate level of scrutiny employed by the United States Supreme Court generally applies when classifications are based on gender or illegitimacy. See, e.g., Clark v. Jeter (1988), ___ U.S. ___, 108 S.Ct. 1910, 100 L.Ed.2d 465 (illegitimacy); Mississippi University for Women v. Hogan (1982), 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (gender). To withstand intermediate scrutiny, the party seeking to uphold the statutory classification must show that the classification is substantially related to an important governmental objective. Hogan, 458 U.S. at 724, 73 S.Ct. at 3336, 73 L.Ed.2d at 1098.

All other classifications scrutinized under the United States Constitution are subject to the minimal rational basis standard of review. Under this standard, classifications are presumed constitutional and the party challenging the statute bears the burden of proving beyond a reasonable doubt that the classification is not rationally related to a legitimate state objective. Minnesota v. Clover Leaf Creamery Co. (1981), 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, 668-69, reh. denied, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222. The United States Supreme Court applies this standard of review when classifications are based on economics or social welfare. Dandridge v. Williams (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501-02.

Wood argues that § 41-5-206(3), MCA, deprives him, and all such youths similarly situated, to equal protection by infringing on his "'fundamental right' of due process of law." In asserting this argument, Wood argues that the strict scrutiny analysis is applicable and that the state therefore has the burden of showing that classifying youths who have violated the law on the basis of age and seriousness of the offense is justified by a compelling state interest. Wood recognizes the protection of the community as the state's interest in this matter, and then argues that classifying youths on the bases of their age and seriousness of the offense is neither rationally related to a legitimate state interest nor justified by a compelling state interest.

We disagree with Wood's basic assertion that procedural due process, as mandated by the Fourteenth Amendment, is also a fundamental right. No support exists for this assertion. On the contrary, the United States Supreme Court has limited its recognition of fundamental rights, requiring a strict scrutiny analysis, to interstate travel, voting, privacy, and

the rights guaranteed by the First Amendment, which includes the freedom of speech, press, religion, association and belief, and the right to assemble peaceably and to petition the government for redress of grievances. See, e.g., Shapiro, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (interstate travel); Dunn, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (voting); Stanley v. Georgia (1969), 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (privacy); Widmar v. Vincent (1981), 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (speech); Press-Enterprise Co. v. Superior Court (1984), 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (press); Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (religion); Shelton v. Tucker (1960), 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (association and belief); and Hague v. C.I.O. (1939), 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (assemble peaceably and petition government for redress of grievances).

The classification found in § 41-5-206(3), MCA, is based on both age and gravity of the offense. The United States Supreme Court has held that age is not a suspect class requiring a strict scrutiny analysis. Massachusetts Board of Retirement v. Murgia (1976), 427 U.S. 307, 313-15, 96 S.Ct. 2562, 2566-67, 49 L.Ed.2d 520, 524-26. The classification is also not based on gender or illegtimacy, and therefore not subject to an intermediate level of scrutiny.

In light of the above, we hold that the proper standard of review in this case is whether the classification found in § 41-5-206, MCA, is rationally related to a legitimate state interest. Wood therefore has the burden of showing that the age and seriousness of the offense are not rationally related to a legitimate state interest. Metropolitan Casualty Ins. Co. v. Brownell (1935), 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070, 1072-73. We hold that Wood has failed to meet

this burden. The legislative history of House Bill 470, the legislative vehicle of § 41-5-206(3), MCA, reveals that the legislature recognized the increase in the number of homicides committed by today's teenagers and expressed that the passage of House Bill 470 would aid in dealing effectively with these youths. Minutes of Montana House Judiciary Committee, at 8-9 (February 17, 1987).

Wood bases his argument on the Equal Protection Clause of the United States Constitution, U.S. Const. amend. 14, § 1, and in light of the federal cases noted above, we hold that § 41-5-206, MCA, does not violate this clause. Wood, however, does not refer to the Montana Constitution. Nonetheless, this Court reserves "the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law." In the Matter of N.B. (Mont. 1980), 620 P.2d 1228, 1231, 37 St.Rep. 2031, 2033. We choose to exercise this power to determine whether § 41-5-206, MCA, violates the Equal Protection Clause of the Montana Constitution.

In examining whether a statute is constitutional under our state Equal Protection Clause, Mont. Const. art. II, § 4, this Court also recognizes a three tier analysis. This Court, however, has chosen not to follow the exact standards as set forth in the United States Supreme Court's decisions. Pfost v. State (Mont. 1985), 713 P.2d 495, 500-01, 42 St.Rep. 1957, 1963-64; Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 1313, 43 St.Rep. 65, 70. When a fundamental right, as enumerated by the Montana Constitution, is being deprived, or when a suspect classification exists, this Court will apply the strict scrutiny analysis. Pfost, 713 P.2d at 501, 42 St.Rep. at 1964.

The middle tier analysis, first developed in Butte Community Union, is applicable when a benefit, not found

within the Declaration of Rights, is nonetheless lodged within the Montana Constitution. In <u>Butte Community Union</u>, we held that no fundamental right to welfare exists, but noted that Article XII, § 3(3), directed the legislature to provide necessary assistance to the misfortunate. We therefore held that in determining whether a classification found within a welfare statute is constitutional, the state must demonstrate that 1) the classification is reasonable and 2) the state's interest in the classification is more important than the people's interest in obtaining welfare benefits. <u>Butte Community Union</u>, 712 P.2d at 1312-14, 43 St.Rep. at 68-71. In other circumstances, this Court applies the rational basis analysis. <u>See</u> Cottrill v. Cottrill Sodding Service (Mont. 1987), 744 P.2d 895, 897, 44 St.Rep. 1762, 1764; Godfrey v. Montana State Fish and Game Comm'n. (Mont. 1981), 631 P.2d 1265, 1267-68, 38 St.Rep. 661, 663-65.

The Montana Constitution provides that "the rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article unless specifically precluded by laws which enhance the protection of such persons." Mont. Const. art. II, § 15. The Equal Protection Clause of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws. . . ." Mont. Const. art. II, § 4. No provision exists in the Montana Constitution that provides a youth with a fundamental right to be treated specially, nor are any benefits lodged within the Montana Constitution that would provide a youth with an interest whose statutory abridgement requires something more than a rational relationship to a legitimate government objective. We therefore hold that the rational basis analysis is applicable in this case to determine whether the statute is constitutional under the

Montana Constitution. As we noted above, we hold that the statute is rationally related to a legitimate state interest.

Other jurisdictions faced with the same issue, utilized a rational relationship test and upheld classifications based on age and seriousness of the offense. See People v. J.S. (Ill. 1984), 469 N.E.2d 1090, 1094-95; State v. Anderson (Idaho 1985), 700 P.2d 76, 80; People v. Drayton (N.Y. 1976), 350 N.E.2d 377, 379-80; People v. Thorpe (Colo. 1982), 641 P.2d 935, 937-40. As already noted, treatment as a juvenile is not an inherent right and the legislature may restrict or qualify that right. We therefore conclude that the classification found in § 41-5-206, MCA, based on age and seriousness of the offense, is rationally related to the legitimate state objective of curbing homicides committed by teenagers and protecting society from these violent offenders under both the United States and Montana Constitutions.

The last issue raised on appeal is whether § 41-5-206, MCA, violates the separation of powers doctrine of the Montana Constitution.

Wood argues that the legislature is attempting to control a judicial function by enacting § 41-5-206(3), MCA. Specifically, Wood argues that the legislature has usurped the judiciary's power to hear and decide motions brought before it and that this violates the doctrine of separation of powers under the Montana Constitution and must be declared invalid. We disagree.

The legislature's power to create the youth courts is unquestionable. The Montana Constitution provides that "[t]he judicial power of the state is vested in one supreme court, district courts, justice courts, and such other courts as may be provided by law " (emphasis added). Mont. Const. art. VII, § 1. Under this section, the legislature established the youth courts to provide judicial protection

for youths who have violated the law. As previously noted, the legislature also has the inherent power to redefine that protection to achieve a legitimate state objective. The legislature pursued this option in 1987 by revising the legislatively-created transfer of jurisdiction mechanism.

We held above that by the enactment of § 41-5-206(3), MCA, the legislature does not grant youths age 16 years or older who have committed or attempted to commit deliberate or mitigated deliberate homicide, a hearing to consider mitigating factors before transferring the youth to district court. No violation of the separation of power doctrine occurs under the Montana Constitution when the legislature acts to revise the protections afforded youths which were created under its own legislative power. In light of the above we hold that § 41-5-206, MCA, does not violate the separation of powers doctrine of the Montana Constitution.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 14 -