JUSTICE TRIEWEILER
specially concurring.
I rejoice at the majority’s re-discovery of the rights provided for in the Equal Protection Clause of Article II, Section 4, of Montana’s Constitution. However, I find it peculiar that nowhere in the majority’s opinion is any mention made of the majority’s decision in Stratemeyer v. MACO Workers’ Compensation Trust (Mont. 1993), 855 P.2d *276 506, 50 St. Rep. 731. Perhaps that is because the result in this case cannot be reconciled with the majority’s decision in Stratemeyer. That is because under Stratemeyer there is no legislative classification which won’t satisfy the toothless rational basis test.
This same majority held in Stratemeyer that even where no rational basis for a legislative classification is established by the Legislature or proven in district court, this Court can speculate about why the Legislature acted as it did, and that speculation can serve as the basis for overcoming a constitutional challenge. This Court went on to add that even when the State offers no evidence to justify a legislative classification, a person challenging the legislation has the burden of proving that there is no rational basis. In other words, under the Stratemeyer decision, a citizen victimized by legislative discrimination has to, first of all, imagine every conceivable basis for that discrimination about which this Court might speculate and then somehow disprove it. This Court then went on in Stratemeyer to conclude that a justification for the classification at issue in that case could have been the Legislature’s intention to save money, even though there was no evidence in the record that the classification would save money. This Court held that:
The exclusion of mental claims rationally relates to the possible goal of reducing costs and having a viable program for the State and the enrolled employers and employees in the workers’ compensation field. [Emphasis added].
Stratemeyer, 855 P.2d at 511.
Certainly, by that standard the classification in this case passes any rational basis test. Who can dispute that discriminating against beneficiaries under a certain age “relates to the possible goal of reducing costs” for the teachers’ retirement system?
I, of course, have no regard for the Stratemeyer decision. I would not follow it and will urge its early demise at every opportunity.
The majority, however, has neither followed it, distinguished it, nor overruled it. Therefore, its decision in this case is both legally and intellectually inconsistent.
Surely this decision must cause a great deal of confusion to those legal scholars and lawyers who follow this Court’s decisions for the purpose of discerning reliable legal and constitutional principles upon which to base future advice and conduct. To you, let me simply provide the following explanation. Stratemeyer dealt with a classification in the highly political area of workers’ compensation law. This *277 case deals with the less politically controversial area of teachers’ retirement benefits.
Because of this Court’s history of using the rational basis test as a flexible tool for political expediency, I would not base this decision on such a fragile foundation. I believe that the right to be free from discrimination based on age is a significant enough right that classifications based on age warrant middle-tier scrutiny.
The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and the Equal Protection Clause in Article II, Section 4, of the Montana Constitution, provide that “[n]o person shall be denied the equal protection of the laws.” The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.
Traditionally, the United States Supreme Court has relied on a two-tier system of scrutiny for reviewing whether a state’s statutory scheme violates the comparable provision in the Fourteenth Amendment to the United States Constitution. Butte Community Union, 712 P.2d at 1311. Historically, the two modes of analysis have been strict scrutiny and the rational basis test. Matter of Wood (1989), 236 Mont. 118, 123-24, 768 P.2d 1370, 1374.
Justice Marshall pointed out the inadequacy of the two-tiered system of scrutiny for analyzing age discrimination cases in his dissent in Massachusetts Board of Retirement v. Murgia (1976), 427 U.S. 307, 319, 96 S.Ct. 2562, 2569-70, 49 L.Ed.2d 520, 528-29 (Marshall, J., dissenting), as follows:
If a statute invades a “fundamental” right or discriminates against a “suspect” class, it is subject to strict scrutiny. If a statute is subject to strict scrutiny, the statute always or nearly always, see Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), is struck down. Quite obviously, the only critical decision is whether a strict scrutiny should be invoked at all....
But however understandable the Court’s hesitancy to invoke strict scrutiny, all remaining legislation should not drop into the bottom tier, and be measured by the mere rationality test. For that test, too, when applied as articulated, leaves little doubt about the outcome; the challenged legislation is always upheld. It cannot be gainsaid that there remain rights, not now classified as “fundamental,” that remain vital to the flourishing of a free society, and classes, not now classified as “suspect,” that are unfairly burdened *278 by invidious discrimination unrelated to the individual worth of their members. Whatever we call these rights and classes, we simply cannot forego all judicial protection against discriminatory legislation bearing upon them, but for the rare instances when the legislative choice can be termed “wholly irrelevant” to the legislative goal. McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961). [Citations omitted].
Perhaps in response to the legitimate concerns articulated so clearly by Justice Marshall, the U.S. Supreme Court has begun to recognize a third level of scrutiny for rights that are not “fundamental” and classes that are not now considered “suspect,” but which deserve more scrutiny than provided for under the rational basis test. In analyzing the circumstances which will give rise to this heightened “middle-tier” of scrutiny, Professor Laurence Tribe offers the following explanation:
Broadly speaking, there are two circumstances that trigger heightened scrutiny. The first involves infringement of “important,” although not necessarily “fundamental,” rights or interests. The extent to which the Court’s scrutiny is heightened depends both on the nature of the interest and the degree to which it is infringed. Thus, in Plyler v. Doe, [457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)], the Court adopted a requirement that the State’s goal be “substantial” when faced with a classification which served to deprive illegal alien children of any education, an interest which the Court explicitly held to be “importan[t]” in “maintaining our basic institutions.” Significant in the Court’s decision to heighten scrutiny was the risk that such deprivation would serve to “creat[e] and perpetuat[e]... a subclass of illiterates within our boundaries.”
Likewise, in Hampton v. Mow Sun Wong, [426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976)], infringement of the interest of aliens in employment in the federal competitive civil service was struck down specifically because of how broadly the “liberty” of aliens is restricted by their exclusion from such a large part of the economy....
A second broad circumstance in which intermediate review has been triggered involves government’s use of sensitive, althoughnot necessarily suspect, criteria of classification. Rules discriminating against aliens are subjected to a judicial approach clearly more demanding than the basic requirement of minimum rationality and yet sometimes less demanding, particularly when federal laws *279 or regulations are involved, than the scrutiny employed to review rules burdening racial and ancestral minorities. Rules discriminating against illegitimates are now explicitly subjected to an intermediate form of heightened review. Gender discrimination similarly occupies an intermediate position. Likewise, the Court has implicitly subjected a classification based on mental retardation to intermediate review despite explicit efforts to deny that it was doing so.
L. Tribe, American Constitutional Law, § 16-33 (2d ed. 1988).
It is true that the U.S. Supreme Court has declined to extend this heightened level of scrutiny to classifications based upon age. Murgia, 427 U.S. 307, 96 S.Ct. 2562. However, our Court has developed its own line of authority recognizing a middle-tier of analysis, and in doing so, we have stated that:
This Court need not blindly follow the United States Supreme Court when deciding whether a Montana statute is constitutional pursuant to the Montana Constitution....
We will not be bound by decisions of the United States Supreme Court where independent state grounds exist for developing heightened and expanded rights under our state constitution.
Butte Community Union, 712 P.2d at 1313.
In Butte Community Union, this Court was asked to decide whether legislation which linked eligibility for welfare benefits to a person’s age violated the Equal Protection Clause found in Article II, Section 4, of the Montana Constitution.
We held that to be a fundamental right under Montana’s Constitution, the right must be found in Montana’s Declaration of Rights or be a right “without which other constitutionally guaranteed rights would have little meaning.” Butte Community Union, 712 P.2d at 1311. We held that, although mentioned in the Constitution, the right to welfare was not a fundamental right. However, since it was an important enough right to be mentioned elsewhere in the Constitution, we held that its abridgment required something more than a rational relationship to a governmental objective. We stated that:
A need exists to develop a meaningful middle-tier analysis. Equal protection of law is an essential underpinning of this free society. The old rational basis test allows government to discriminate among classes of people for the most whimsical reasons. Welfare benefits grounded in the Constitution itself are deserving of great protection.
*280 ... Where constitutionally significant interests are implicated by governmental classification, arbitrary lines should be condemned. Further, there should be balancing of the rights infringed and the governmental interests to be served by such infringement.
Butte Community Union, 712 P.2d at 1314.
For these reasons, we adopted the following standard of review for those interests which we deemed significant enough to warrant a middle-tier analysis:
We hold that a finding that HB 843 is constitutional requires the State to demonstrate two factors: (1) that its classification of welfare recipients on the basis of age is reasonable; and (2) that its interest in classifying welfare recipients on the basis of age is more important than the people’s interest in obtaining welfare benefits.
Butte Community Union, 712 P.2d at 1314.
Based upon that test, we held in language relevant to the issue raised in that case that:
[T]he State’s objective in enacting HB 843 — savingmoney — must be balanced against the interest of misfortunate people under the age of 50 in receiving financial assistance from the State. The trial record does not show the State to be in such a financially unsound position that the welfare benefit, granted constitutionally, can be abrogated.
Butte Community Union, 712 P.2d at 1314.
In this case, the District Court and the majority have declined to apply the middle-tier analysis provided for in Butte Community Union based on their conclusion that retirement benefits are not the same as welfare benefits and that there is no requirement in Montana’s Constitution that retirement benefits be provided. However, the involvement of an important right or interest is only one of the two circumstances that triggers heightened scrutiny. “A second broad circumstance in which intermediate review has been triggered involves government’s use of sensitive, although not necessarily suspect, criteria of classification.” L. Tribe, American Constitutional Law, § 16-33 (2d ed. 1988). According to the laws of Montana, age is a “sensitive” if not “suspect” basis for classification. To hold otherwise would be to ignore the import of § 49-1-102, MCA, of the Montana Human Rights Act which provides that “[t]he right to be free from discrimination because of... age ... is recognized as and declared to be a civil right.”
Accordingly, I would hold that statutory classifications based upon age involve a sensitive basis for classification and warrant a middle- *281 tier test for determining whether they violate the Equal Protection Clause of Montana’s Constitution. I would conclude that the District Court erred when it applied the rational basis test, rather than the middle-tier analysis, to determine whether the age classification in § 19-4-711, MCA (1991), violates equal protection guarantees of the Montana Constitution.
However, I would affirm the result of the District Court’s decision. In order to establish that the age classification set forth in § 19-4-711, MCA (1991), does not violate the State’s Equal Protection Clause, the State must demonstrate two factors: (1) that its classification on the basis of age is reasonable; and (2) that its interest in classifying entitlement to retirement benefits on the basis of age is more important than plaintiff’s interest in obtaining retirement benefits.
The record in this case fails to satisfy either requirement. There is no legislative history which even attempts to set forth the reason for the discriminatory treatment of retiree beneficiaries as opposed to disability or death beneficiaries. Neither was there any evidence offered in the District Court or before the Legislature which would demonstrate on an actuarial basis the State’s interest in limiting the post-retirement adjustment to retirees or their beneficiaries who are at least 55 years of age. Without such an evidentiary basis, it is impossible for plaintiff, or for this Court, to compare the interests of the State Retirement System to the interests of retirees and their beneficiaries who are denied benefits because of their age.
On appeal, the attorneys for the Teachers’ Retirement System have asserted that voluntary retirees are more likely to be financially prepared to retire than involuntary retirees. It contends that young voluntary service retirees and their beneficiaries who are under 55 years of age may rely on their earning capacity to supplement their retirement benefits. By contrast, the Teachers’ Retirement System argues that involuntary retirees (those who are disabled or the beneficiary of deceased employees) have only their retirement allowance to rely on. The problem with the arguments raised by the Teachers’ Retirement System on appeal is that they have no factual basis in the legislative history or the record from the District Court.
Without a factual basis for their assertion, these arguments are merely broad generalizations such as those that we condemned in Butte Community Union. There, we held that the State employed an arbitrary classification when it asserted, without a factual basis, that “people under the age of 50 are more capable of surviving without assistance than people over the age of 50.” Butte Community Union, *282 712 P.2d at 1314. Likewise, I would conclude that the age classification in § 19-4-711, MCA(1991), is arbitrary, not grounded in fact, and therefore, invalid. Accordingly, I would hold that to the extent that the age classification in § 19-4-711, MCA (1991), denies a post-retirement benefit to those service retirees and their beneficiaries under the age of 55, the statute violates the Equal Protection Clause of the Montana Constitution.
JUSTICE HUNT joins the foregoing special concurrence.