No. 92-301

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DEBRA ARNESON,

    Plaintiff and Respondent,

    -v-

STATE OF MONTANA, by and through
its DEPARTMENT OF ADMINISTRATION,
TEACHERS' RETIREMENT DIVISION,
and TEACHERS' RETIREMENT BOARD,

    Defendants and Appellants.



APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Brenda Nordlund, State of Montana Teachers'
            Retirement Division, Helena, Montana

        For Respondent:

            Peter Michael Meloy, Meloy Law Firm, Helena, Montana


                                Submitted:  August 16, 1993

                                Decided:  December 7, 1993

Filed:

_____
              Clerk

Retired Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the decision of the District Court of the First Judicial District, Lewis and Clark County, concluding that § 19-4-711, MCA (1991) (now codified at § 19-20-711, MCA), is unconstitutional to the extent that it employed an unreasonable classification in violation of the equal protection clause of the Montana Constitution, Article II, Section 4. We affirm.

The appellants' appeal and the respondent's cross appeal raise the following issues:

1. Did the District Court err when it applied the rational basis test rather than the middle-tier analysis to determine whether the age classification in § 19-4-711, MCA (1991), violates equal protection guarantees of the Montana Constitution?

2. Did the District Court err when it concluded that the age classification in § 19-4-711, MCA (1991), violates Article II, Section 4, of the Montana Constitution by denying respondent equal protection of the laws?

3. Did the District Court err when it concluded that the age distinction in § 19-4-711, MCA (1991), does not violate the Montana Human Rights Act?

In 1989 the legislature passed Chapter 115 Session Laws of 1989 which, for its purpose, provided for a post-retirement adjustment increase in the pensions of the beneficiaries of the Teachers' Retirement System. The law provided that to be eligible for the adjustment, retirees or their beneficiaries must be 55

2

years of age or older; or, irrespective of age, all those receiving disability or survivorship benefits.

The respondent's benefit was derived from her mother, who was a member of the Teachers' Retirement System, and who had reached retirement age and retired. The mother selected the retirement option that would permit benefits to be paid to her for her lifetime and upon her death continue through the life of her beneficiary (respondent). The mother died shortly after her retirement and the respondent began receiving the benefits. The respondent is 31 years of age.

The respondent has been classified as a beneficiary due to the fact that her mother had retired and was a beneficiary at time of her death, and respondent succeeded to the benefits. Being under 55 years of age she did not receive the adjustment. However, if her mother had continued to work and died while working the respondent would be considered a survivor and would receive the adjustment even though she was 31 years of age. Her request for the post-retirement adjustment was denied and she brought this action.

The respondent contends that the statute violates Article II, Section 4 of the Montana Constitution in that it denies her the equal protection of the laws.

No facts are in dispute. Our scope of review will be as to determine whether the District Court's interpretation of the law is

correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603.

We will discuss the first two issues together. Different tests of scrutiny are applied to such statute relative to the contentions of the respondent.

This statute, under the equal protection question, does not come under the strict scrutiny test because strict scrutiny of a legislative classification is required only when the classification impermissibly interferes with the exercise of a fundamental right or operates to a peculiar disadvantage of a suspect class. Here the respondent is not a member of a suspect class nor is a fundamental right involved.

In her cross appeal the respondent urges us to adopt the middle-level scrutiny test. The test is applied when the middle level of review is used and is as follows: The means chosen by the legislature (classification) must serve important governmental objectives and must be substantially related to the achievement of those objectives. The middle-level scrutiny test has been recently applied by the U.S. Supreme Court in discussing cases involving such things as gender, alienage and illegitimacy, but the court has specifically refused to invoke it involving age and has applied the rational test thereto. Gregory v. Ashcroft (1991), 501 U.S. ____, 115 L.Ed.2d 410, 111 S.Ct. 2395; Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 965 S.Ct. 2562, 49 L.Ed.2d 520.

4

This Court applied the middle tier scrutiny test in Butte Communion Union v. Lewis (1986), 219 Mont. 426, 712 P.2d 1309, in which we said in developing a middle tier test, as follows:

> We proceed to develop our own middle-tier test for determining whether HB 843 violates the Montana Constitution. We do so because although a right to welfare is not contained in our Declaration of Rights, it is sufficiently important that art. XII, sec. 3(3) directs the Legislature to provide necessary assistance to the misfortunate. A benefit lodged in our State Constitution is an interest whose abridgment requires something more than a rational relationship to a governmental objective.

Butte Community Union, 712 P.2d at 1313. The Court in that opinion also stated:

> However, because the Constitutional Convention delegates deemed welfare to be sufficiently important to warrant reference in the Constitution, we hold that a classification which abridges welfare benefits is subject to a heightened scrutiny under an equal protection analysis and that HB 843 must fall under such scrutiny.

Butte Community Union, 712 P.2d at 1311.

The application of the middle tier scrutiny test in the above case was based on a benefit directed in our Constitution. Here there is no such constitutional direction. We have previously declined to apply the middle tier scrutiny test to an "age plus" classification, absent a constitutionally based benefit. See Matter of Wood (1989), 236 Mont. 118, 127, 768 P.2d 1370, 1376. We also decline to apply it here.

The District Court applied the lowest level of scrutiny, the rational basis test, which determines whether the classification is rationally related to furthering a legitimate state purpose. The

5

trial court found the classification here did not rationally relate to furthering a legitimate state purpose.

The District Court basically found in applying the rational basis test that there was not any reason which was rationally related to the legitimate state purpose to grant a post-retirement adjustment to those who are receiving disability or survivorship allowances and who are under 55 years of age and to deny such adjustment to people in the plaintiff's position under age 55.

We will also apply the rational basis test.

To a certain extent, nearly all legislation classifies or sets forth classifications of applicability, benefits and recipients. If some of these classifications are imperfect they do not necessarily violate the equal protection clauses.

We note that every possible presumption must be indulged in favor of the constitutionality of the statute. See State v. Safeway Stores (1938), 106 Mont. 182, 199, 76 P.2d 81, 84.

The purpose of this law is to grant to the Retirement System beneficiaries, retirees' survivors, and disabled, an amount to alleviate the eroding effect of inflation on their pension. Both the survivor of an employee and the beneficiary of an employee who has retired, are subject to the effect of inflation. But the classification as to who is to receive the post-retirement adjustment does not include the respondent who is the beneficiary of a former employee who had retired. As a result, this legislation is "under inclusive." This differentiation does not

6

create a reasonable classification between such ultimate adult survivor and adult beneficiary. They are both similarly situated with respect to the purpose of this law.

The respondent states that there is no possible purpose which can be conceived to justify such a classification considering the overall purpose of the legislation of post-retirement adjustment to compensate for inflation. The respondent contends no distinction should be made between a beneficiary of a retired employee and the beneficiary of an employee who died while working when the beneficiaries are both under the age of 55. We agree.

We are unable to find any rational relationship to the purpose of the legislation for the establishment of such a classification. It is wholly arbitrary and an example of the legislature picking and choosing who will receive benefits. Such a classification must distinguish one class from another taking into consideration the purpose of the statute. See Peter Kewitt Sons' Co. v. State Board of Equalization (1973), 161 Mont. 140, 147, 505 P.2d 102, 106-07 (quoting State v. State Board of Equalization (1965), 145 Mont. 380, 403 P.2d 635).

The granting of a post-retirement adjustment does not come within the approach of considering whether the enactment is experimental or piecemeal, and therefore applying the legislation to one phase of the problem and not affecting others. See Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 339, 777 P.2d 862, 866. As we stated above, the legislature cannot arbitrarily pick

7

and choose. The appellant has made such an argument on a money saving basis, but even if the governmental purpose is to save money, it cannot be done on a wholly arbitrary basis. The classification must have some rational relationship to the purpose of the legislation. There is nothing in the record or by conjecture which would justify the differentiation here.

The appellant makes a distinction between the class of service retirees and their beneficiaries and the class of disability and survivorship beneficiaries in that the class of service retirees is based on voluntariness and the class of disability and survivorship beneficiaries is not. That may be true on the basis of the retirees or the disabled, but it is not true as applied to the adult beneficiaries of an employee, a retired employee, or a disabled employee. In addition, there is no record as to what is voluntary and what is not voluntary.

There is no reasonable basis to the classification which permits an adult beneficiary of a disabled or deceased member to receive the adjustment regardless of age, and deny the adult beneficiary of a deceased service retiree who retired under voluntary or involuntary circumstances the adjustment because the beneficiary is under 55 years of age. The constitutional defect of the statute as applied to respondent is revealed when it is reviewed in light of its practical application. See State v. Jack (1975), 167 Mont. 456, 462, 539 P.2d 726, 729. We conclude that its application to this respondent whereby the classification excludes

8

her from receiving the post-retirement adjustment, is unconstitutional and in violation of Article II, Section 4 of the Montana Constitution. We affirm the District Court on the first two issues. Because of our holdings on the first two issues, there is no need to decide the third issue of whether the age distinction violates the Montana Human Rights Act. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Justice Terry N. Trieweiler specially concurring.

I rejoice at the majority's re-discovery of the rights provided for in the Equal Protection Clause of Article II, Section 4, of Montana's Constitution. However, I find it peculiar that nowhere in the majority's opinion is any mention made of the majority's decision in *Stratemeyer v. MACO Workers' Compensation Trust* (Mont. 1993), 855 P.2d 506, 50 St. Rep. 731. Perhaps that is because the result in this case cannot be reconciled with the majority's decision in *Stratemeyer*. That is because under *Stratemeyer* there is no legislative classification which won't satisfy the toothless rational basis test.

This same majority held in *Stratemeyer* that even where no rational basis for a legislative classification is established by the Legislature or proven in district court, this Court can speculate about why the Legislature acted as it did, and that speculation can serve as the basis for overcoming a constitutional challenge. This Court went on to add that even when the State offers no evidence to justify a legislative classification, a person challenging the legislation has the burden of proving that there is no rational basis. In other words, under the *Stratemeyer* decision, a citizen victimized by legislative discrimination has to, first of all, imagine every conceivable basis for that discrimination about which this Court might speculate and then somehow disprove it. This Court then went on in *Stratemeyer* to conclude that a justification for the classification at issue in

10

that case could have been the Legislature's intention to save money, even though there was no evidence in the record that the classification would save money. This Court held that:

> The exclusion of mental claims rationally relates to the <u>possible goal</u> of reducing costs and having a viable program for the State and the enrolled employers and employees in the workers' compensation field. [Emphasis added].

*Stratemeyer*, 855 P.2d at 511.

Certainly, by that standard the classification in this case passes any rational basis test. Who can dispute that discriminating against beneficiaries under a certain age "relates to the possible goal of reducing costs" for the teachers' retirement system?

I, of course, have no regard for the *Stratemeyer* decision. I would not follow it and will urge its early demise at every opportunity.

The majority, however, has neither followed it, distinguished it, nor overruled it. Therefore, its decision in this case is both legally and intellectually inconsistent.

Surely this decision must cause a great deal of confusion to those legal scholars and lawyers who follow this Court's decisions for the purpose of discerning reliable legal and constitutional principles upon which to base future advice and conduct. To you, let me simply provide the following explanation. *Stratemeyer* dealt with a classification in the highly political area of workers'

11

compensation law. This case deals with the less politically controversial area of teachers' retirement benefits.

Because of this Court's history of using the rational basis test as a flexible tool for political expediency, I would not base this decision on such a fragile foundation. I believe that the right to be free from discrimination based on age is a significant enough right that classifications based on age warrant middle-tier scrutiny.

The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and the Equal Protection Clause in Article II, Section 4, of the Montana Constitution, provide that "[n]o person shall be denied the equal protection of the laws." The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

Traditionally, the United States Supreme Court has relied on a two-tier system of scrutiny for reviewing whether a state's statutory scheme violates the comparable provision in the Fourteenth Amendment to the United States Constitution. *Butte Community Union*, 712 P.2d at 1311. Historically, the two modes of analysis have been strict scrutiny and the rational basis test. *Matter of Wood* (1989), 236 Mont. 118, 123-24, 768 P.2d 1370, 1374.

Justice Marshall pointed out the inadequacy of the two-tiered system of scrutiny for analyzing age discrimination cases in his dissent in *Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307,

12

319, 96 S. Ct. 2562, 2569-70, 49 L. Ed. 2d 520, 528-29 (Marshall, J., dissenting), as follows:

> If a statute invades a "fundamental" right or discriminates against a "suspect" class, it is subject to strict scrutiny. If a statute is subject to strict scrutiny, the statute always or nearly always, *see Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), is struck down. Quite obviously, the only critical decision is whether a strict scrutiny should be invoked at all. . . .
>
> But however understandable the Court's hesitancy to invoke strict scrutiny, all remaining legislation should not drop into the bottom tier, and be measured by the mere rationality test. For that test, too, when applied as articulated, leaves little doubt about the outcome; the challenged legislation is always upheld. It cannot be gainsaid that there remain rights, not now classified as "fundamental," that remain vital to the flourishing of a free society, and classes, not now classified as "suspect," that are unfairly burdened by invidious discrimination unrelated to the individual worth of their members. Whatever we call these rights and classes, we simply cannot forego all judicial protection against discriminatory legislation bearing upon them, but for the rare instances when the legislative choice can be termed "wholly irrelevant" to the legislative goal. *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961). [Citations omitted].

Perhaps in response to the legitimate concerns articulated so clearly by Justice Marshall, the U.S. Supreme Court has begun to recognize a third level of scrutiny for rights that are not "fundamental" and classes that are not now considered "suspect," but which deserve more scrutiny than provided for under the rational basis test. In analyzing the circumstances which will give rise to this heightened "middle-tier" of scrutiny, Professor Laurence Tribe offers the following explanation:

> Broadly speaking, there are two circumstances that trigger heightened scrutiny. The first involves

13

infringement of "important," although not necessarily "fundamental," rights or interests. The extent to which the Court's scrutiny is heightened depends both on the nature of the interest and the degree to which it is infringed. Thus, in *Plyler v. Doe*, the Court adopted a requirement that the State's goal be "substantial" when faced with a classification which served to deprive illegal alien children of any education, an interest which the Court explicitly held to be "importan[t]" in "maintaining our basic institutions." Significant in the Court's decision to heighten scrutiny was the risk that such deprivation would serve to "creat[e] and perpetuat[e] . . . a subclass of illiterates within our boundaries."

Likewise, in *Hampton v. Mow Sun Wong*, infringement of the interest of aliens in employment in the federal competitive civil service was struck down specifically because of how broadly the "liberty" of aliens is restricted by their exclusion from such a large part of the economy. . . .

. . . .

A second broad circumstance in which intermediate review has been triggered involves government's use of sensitive, although not necessarily suspect, criteria of classification. Rules discriminating against aliens are subjected to a judicial approach clearly more demanding than the basic requirement of minimum rationality and yet sometimes less demanding, particularly when federal laws or regulations are involved, than the scrutiny employed to review rules burdening racial and ancestral minorities. Rules discriminating against illegitimates are now explicitly subjected to an intermediate form of heightened review. Gender discrimination similarly occupies an intermediate position. Likewise, the Court has implicitly subjected a classification based on mental retardation to intermediate review despite explicit efforts to deny that it was doing so.

L. Tribe, American Constitutional Law, § 16-33 (2d ed. 1988).

It is true that the U.S. Supreme Court has declined to extend this heightened level of scrutiny to classifications based upon age. *Murgia*, 427 U.S. 307. However, our Court has developed its

14

own line of authority recognizing a middle-tier of analysis, and in doing so, we have stated that:

> This Court need not blindly follow the United States Supreme Court when deciding whether a Montana statute is constitutional pursuant to the Montana Constitution. . . .
>
> We will not be bound by decisions of the United States Supreme Court where independent state grounds exist for developing heightened and expanded rights under our state constitution.

*Butte Community Union*, 712 P.2d at 1313.

In *Butte Community Union*, this Court was asked to decide whether legislation which linked eligibility for welfare benefits to a person's age violated the Equal Protection Clause found in Article II, Section 4, of the Montana Constitution.

We held that to be a fundamental right under Montana's Constitution, the right must be found in Montana's Declaration of Rights or be a right "without which other constitutionally guaranteed rights would have little meaning." *Butte Community Union*, 712 P.2d at 1311. We held that, although mentioned in the Constitution, the right to welfare was not a fundamental right. However, since it was an important enough right to be mentioned elsewhere in the Constitution, we held that its abridgment required something more than a rational relationship to a governmental objective. We stated that:

> A need exists to develop a meaningful middle-tier analysis. Equal protection of law is an essential underpinning of this free society. The old rational basis test allows government to discriminate among classes of people for the most whimsical reasons.

15

Welfare benefits grounded in the Constitution itself are deserving of great protection.

. . . Where constitutionally significant interests are implicated by governmental classification, arbitrary lines should be condemned. Further, there should be balancing of the rights infringed and the governmental interests to be served by such infringement.

*Butte Community Union*, 712 P.2d at 1314.

For these reasons, we adopted the following standard of review for those interests which we deemed significant enough to warrant a middle-tier analysis:

We hold that a finding that HB 843 is constitutional requires the State to demonstrate two factors: (1) that its classification of welfare recipients on the basis of age is reasonable; and (2) that its interest in classifying welfare recipients on the basis of age is more important than the people's interest in obtaining welfare benefits.

*Butte Community Union*, 712 P.2d at 1314.

Based upon that test, we held in language relevant to the issue raised in that case that:

[T]he State's objective in enacting HB 843--saving money--must be balanced against the interest of misfortunate people under the age of 50 in receiving financial assistance from the State. The trial record does not show the State to be in such a financially unsound position that the welfare benefit, granted constitutionally, can be abrogated.

*Butte Community Union*, 712 P.2d at 1314.

In this case, the District Court and the majority have declined to apply the middle-tier analysis provided for in *Butte Community Union* based on their conclusion that retirement benefits are not the same as welfare benefits and that there is no

16

requirement in Montana's Constitution that retirement benefits be provided. However, the involvement of an important right or interest is only one of the two circumstances that triggers heightened scrutiny. "A second broad circumstance in which intermediate review has been triggered involves government's use of sensitive, although not necessarily suspect, criteria of classification." L. Tribe, American Constitutional Law, § 16-33 (2d ed. 1988). According to the laws of Montana, age is a "sensitive" if not "suspect" basis for classification. To hold otherwise would be to ignore the import of § 49-1-102, MCA, of the Montana Human Rights Act which provides that "[t]he right to be free from discrimination because of . . . age . . . is recognized as and declared to be a civil right."

Accordingly, I would hold that statutory classifications based upon age involve a sensitive basis for classification and warrant a middle-tier test for determining whether they violate the Equal Protection Clause of Montana's Constitution. I would conclude that the District Court erred when it applied the rational basis test, rather than the middle-tier analysis, to determine whether the age classification in § 19-4-711, MCA (1991), violates equal protection guarantees of the Montana Constitution.

However, I would affirm the result of the District Court's decision. In order to establish that the age classification set forth in § 19-4-711, MCA (1991), does not violate the State's Equal Protection Clause, the State must demonstrate two factors: (1) that its classification on the basis of age is reasonable; and (2) that

17

its interest in classifying entitlement to retirement benefits on the basis of age is more important than plaintiff's interest in obtaining retirement benefits.

The record in this case fails to satisfy either requirement. There is no legislative history which even attempts to set forth the reason for the discriminatory treatment of retiree beneficiaries as opposed to disability or death beneficiaries. Neither was there any evidence offered in the District Court or before the Legislature which would demonstrate on an actuarial basis the State's interest in limiting the post-retirement adjustment to retirees or their beneficiaries who are at least 55 years of age. Without such an evidentiary basis, it is impossible for plaintiff, or for this Court, to compare the interests of the State Retirement System to the interests of retirees and their beneficiaries who are denied benefits because of their age.

On appeal, the attorneys for the Teachers' Retirement System have asserted that voluntary retirees are more likely to be financially prepared to retire than involuntary retirees. It contends that young voluntary service retirees and their beneficiaries who are under 55 years of age may rely on their earning capacity to supplement their retirement benefits. By contrast, the Teachers' Retirement System argues that involuntary retirees (those who are disabled or the beneficiary of deceased employees) have only their retirement allowance to rely on. The problem with the arguments raised by the Teachers' Retirement

18

System on appeal is that they have no factual basis in the legislative history or the record from the District Court.

Without a factual basis for their assertion, these arguments are merely broad generalizations such as those that we condemned in *Butte Community Union*. There, we held that the State employed an arbitrary classification when it asserted, without a factual basis, that "people under the age of 50 are more capable of surviving without assistance than people over the age of 50." *Butte Community Union*, 712 P.2d at 1314. Likewise, I would conclude that the age classification in § 19-4-711, MCA (1991), is arbitrary, not grounded in fact, and therefore, invalid. Accordingly, I would hold that to the extent that the age classification in § 19-4-711, MCA (1991), denies a post-retirement benefit to those service retirees and their beneficiaries under the age of 55, the statute violates the Equal Protection Clause of the Montana Constitution.

_____
Justice

Justice Hunt joins the foregoing special concurrence.

_____
Justice

19